Northport Health Service, Inc., d/b/a Oak Knoll Nursing Home a/k/a Estes Oak Knoll (hereinafter "Northport"), petitions for a writ of mandamus directing the trial judge to vacate a discovery order.
Terrill Sanders, as administrator of the estate of Pearl Smith, sued Northport, alleging breach of contract, negligence, and wrongful death. Sanders sought discovery of personnel documents, including disciplinary records and evaluations, and documents relating to "other acts" evidence, specifically, "evidence of acts of abuse, mistreatment or neglect of residents in the nursing home facilities other than those that resulted in the severe bruising, hospitalization and death of Pearl Smith." On January 3, 1996, the trial judge granted Sanders's motion to compel, with certain limited exceptions. After overruling Northport's "motion for reconsideration" and its motion for a protective order, the trial judge entered the following order on February 15, 1996:
 "As regards discovery requests previously ordered to be complied with, first this Court addresses the items (contained *Page 54 
in defendant's Motion for Reconsideration) which, as of February 8, 1996, are asserted to be nondiscoverable under certain portions of the 'Medical Services Liability Act,' more particularly described as § 6-5-551, Code of Alabama 1975 (Acts of Alabama 1987, No. 87-189, p. 261, § 12).
 "It is noteworthy that plaintiff asserts that [he] would be unfairly prevented from showing a pattern or practice of defendant (perhaps) not responding to complaints, not monitoring employees closely enough, not properly caring for nursing home residents, etc., if § 6-5-551 were followed. Plaintiff says [he] is entitled to extraordinary treatment as respects what [he] deems the overly harsh effect of the application of § 6-5-551, by virtue of plaintiffs theory of claim [he] has asserted in [his] Complaint.
". . . .
 ". . . [A]s to plaintiff's particular theory as to the actionability of defendant's acts herein, our Supreme Court has addressed this issue before in [Ex parte Golden, 628 So.2d 496 (Ala. 1993)], wherein Justice Kennedy noted that even though fraud was an integral part of plaintiff's Complaint, all actionable theories against a medical provider must be brought under the dictates and within the framework of the Medical Services Liability Act, and thus, evidence (or even discovery) of 'other acts' is prohibited by § 6-5-551.
 "However, as this writer has been called upon to 'visit' almost every disputed discovery request in this case, and now to 'revisit' many of these, in light of the legislative enactment entitled Acts of Alabama 1987, No. 87-189, p. 261, § 12, this writer has arrived, with trembling apprehension, at the effect of Ala. Code 1975, § 6-5-551, as is reflected in that Code section's application to this somewhat unique situation: that is, nursing homes are uniquely positioned to render housing, nursing, medical care and treatment to a fragile and once (if not 'oft') neglected segment of our society — the infirm elderly. . . .
". . . .
 "There is no equivalent of § 6-5-551, Code of Alabama 1975, or the 'Medical Services Liability Act' to prohibit discovery or disclosure of 'other acts or omissions' in cases involving infants, minor children and day care centers, nurseries or kindergartens, which minister to this younger class. This writer believes that where the safety and welfare of infants and minor children [are] at stake, discovery should be full-blown and unfettered by legislation that might serve to conceal matters which parents, the state and the public must know so that those unable to care for themselves may be protected.
 "Hence, any legislation which has a 'chilling' effect on the discoverability of information, complaints or abuses involving the elderly — when considered together with the freedom of access afforded infants and minor children, would amount to an unconstitutional and dangerous instance of unequal treatment under the law.
 "Therefore, this Court concludes that any application of Ala. Code 1975, § 6-5-551, which jeopardizes the protection of the infirm elderly (by preventing discovery, as herein, where grievous injury or death might be recorded yet uncorrected) is in violation of the Constitution of the state of Alabama and the United States Constitution.
 "Thus, all discovery previously ordered produced to the plaintiff, is again ordered produced to the plaintiff."
A petition for the writ of mandamus allows "emergency and immediate appellate review of an order that is otherwise interlocutory and not appealable." Rule 21(e)(4), Ala.R.App.P. In order for an appellate court to issue a writ of mandamus, the petitioner must show "(1) a clear legal right . . . to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court." Ex parte Alfab, Inc., 586 So.2d 889, 891
(Ala. 1991).
Northport first asserts that the trial judge sua sponte declared § 6-5-551 unconstitutional, and that, therefore, the order is void because the attorney general had not *Page 55 
been properly served and afforded an opportunity to be heard.
The constitutional issue in this case is very similar to that presented in Ex parte St. Vincent's Hosp., 652 So.2d 225
(Ala. 1994), which, in fact, involved the same trial judge who entered the order complained of here. In St. Vincent's, the petitioner hospital argued that the trial judge's order declared certain Code sections unconstitutional. In his order in St. Vincent's, the trial judge stated:
 "To enforce or construe the aforementioned Code sections in such a manner as to deprive or deny [the hospital's codefendant] its right or ability to demonstrate its own measures directed toward the improvement, review, research, investigation, and loss prevention regarding users of its products would patently amount to unequal treatment under the law."
652 So.2d at 227. (Emphasis added.)
In St. Vincent's, this Court concluded that the trial judge "merely observed that if the statutes were construed to preclude all discovery, the statute[s] would 'amount to unequal treatment under the law.' " 652 So.2d at 227. Furthermore, this Court noted in St. Vincent's:
 "A constitutional issue can be reached by this Court only when it has been raised by a party at the trial level and the attorney general has been served pursuant to § 6-6-227 and Rule 44, Ala.R.App.P. When a party challenging the constitutionality of a statute fails to serve the attorney general, the trial court has no jurisdiction to decide the constitutional claim, and any judgment regarding that claim is void."
652 So.2d at 228.
Assuming, but not deciding, that the trial judge ruled that § 6-5-551 is unconstitutional, we note that the attorney general was not served pursuant to § 6-6-227 and Rule 44, Ala.R.App.P. Therefore, any order holding § 6-5-551
unconstitutional is void.
We next must determine whether this case, in substance, is based on claims of malpractice and is therefore governed by the Alabama Medical Liability Act ("the Act").
In Ex parte Golden, 628 So.2d 496 (Ala. 1993), citingBenefield v. F. Hood Craddock Clinic, 456 So.2d 52 (Ala. 1984), this Court stated that the substance of an action, rather than its form, determines whether an action is a medical malpractice action and, therefore, controlled by the Act. Golden involved allegations that a dentist had made misrepresentations to a patient regarding the patient's medical condition. This Court held that although the plaintiff's claims were fraud-based, they were governed by the Act.
Furthermore, although Golden involved a patient-doctor relationship, a nursing home is, based upon § 6-5-481,[1]
considered to be a "hospital" and thus, also is covered by the provisions of the Medical Liability Act.
Sanders claimed that employees of Northport's nursing home were abusive to Pearl Smith while she was a resident there. Thesubstance of Sanders's complaint is that employees at the nursing home abused, mistreated, or neglected Ms. Smith. Sanders is attempting to discover evidence of "similar acts" as to other patients of the nursing home. The injuries alleged flow from the treatment or mistreatment of a patient in the nursing home. We conclude that this is a medical malpractice claim and that the Act applies.
Having concluded that Sanders's claim is a medical malpractice claim within the ambit of the Medical Liability Act, we now turn to the question whether § 6-5-551 prevents Sanders from seeking discovery of "similar acts" of abuse. The discovery sought in this case, and to which Northport objects, is essentially "pattern and practice" evidence. Section 6-5-551
provides: *Page 56 
 "In any action for injury, damages, or wrongful death, whether in contract or in tort, against a health care provider for breach of the standard of care the plaintiff shall include in the complaint filed in the action a detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable to plaintiff. The plaintiff shall amend his complaint timely upon ascertainment of new or different acts or omissions upon which his claim is based; provided, however, that any such amendment must be made at least 90 days before trial. Plaintiff shall be prohibited from conducting discovery with regard to any other act or omission or from introducing at trial evidence of any other act or omission. Any complaint which fails to include such detailed specification and factual description of each act and omission shall be subject to dismissal for failure to state a claim upon which relief can be granted."
(Emphasis added.)
As previously noted, in Golden this Court determined that the Act applied and that, based upon § 6-5-551, the plaintiff was barred from seeking discovery of "similar acts." Here, we have also determined that the Act applies. Therefore, we can conclude only that Sanders is barred from seeking discovery of "similar acts" evidence or "pattern and practice" evidence. Northport has shown that it has a clear legal right to the relief it requests. Therefore, the writ is due to be granted. The trial court is directed to limit discovery accordingly.
WRIT GRANTED.
HOOPER, C.J., and ALMON, HOUSTON, and KENNEDY, JJ., concur.
MADDOX, SHORES, and BUTTS, JJ., dissent.
[1] Section 6-5-481(7) refers the reader to § 22-21-21, stating that the term "hospitals" is defined in that section. Section22-21-21 does not define "hospitals," but § 22-21-20 does; that section defines "hospitals" to include "long term care facilities such as, but not limited to, skilled nursing facilities, intermediate care facilities, homes for the aged, domiciliary care facilities and related health care institutions when such institution is primarily engaged in offering room, board, laundry and personal assistance with activities of daily living and incidentals thereto."