747 So.2d 887 (1999)
Ex parte Willie B. McCOLLOUGH, as administratrix of the estate of Rochelle S. Loftin, deceased.
(Re Willie B. McCollough, as administratrix of the estate of Rochelle S. Loftin, deceased v. Dalraida Health Center, Inc., et al.).
1962015.
Supreme Court of Alabama.
January 8, 1999.
Tyrone C. Means, H. Lewis Gillis, Mark Englehart, and Deborah Sanders Manasco of Thomas, Means & Gillis, P.C., Montgomery, for petitioner.
Jeffrey W. Smith, Montgomery, for respondent Dalraida Health Center, Inc.
Tom Dutton, Birmingham, for amicus curiae National Citizens' Coalition for Nursing Home Reform, in support of the petitioner.
John L. Quinn of Nakamura & Quinn, Birmingham, for amicus curiae American Ass'n of Retired Persons, in support of the petitioner.
William D. Jones III, Richard J. Brockman, R. Marcus Givhan, and James F. Henry of Johnston, Barton, Proctor & Powell, L.L.P., Birmingham, for amicus curiae Alabama Nursing Home Ass'n.
W. Stancil Starnes and Sybil Vogtle Abbot of Starnes & Atchison, Birmingham, for amicus curiae Medical Ass'n of the State of Alabama.
PER CURIAM.
Willie B. McCollough, as the administratrix of the estate of Rochelle S. Loftin, petitions for a writ of mandamus directed to the Circuit Court of Montgomery County. Ms. McCollough asks this Court to order the circuit court to "compel the requested discovery pursuant to a proper construction of the Alabama Medical Liability Act, Ala.Code 1975, § 6-5-551." Alternatively, Ms. McCollough seeks a declaration that the portions of § 6-5-551 purporting to restrict discovery in medical liability actions are unconstitutional and an order compelling discovery based on that declaration.
*888 Section 6-5-551, enacted as part of the Alabama Medical Liability Act of 1987, provides:
"In any action for injury, damages, or wrongful death, whether in contract or in tort, against a health care provider for breach of the standard of care the plaintiff shall include in the complaint filed in the action a detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable to plaintiff. The plaintiff shall amend his complaint timely upon ascertainment of new or different acts or omissions upon which his claim is based; provided, however, that any such amendment must be made at least 90 days before trial. Plaintiff shall be prohibited from conducting discovery with regard to any other act or omission or from introducing at trial evidence of any other act or omission. Any complaint which fails to include such detailed specification and factual description of each act and omission shall be subject to dismissal for failure to state a claim upon which relief can be granted."
(Emphasis added.)
Ms. McCollough's complaint alleges that the death of Ms. Loftin, her grandmother, was caused by wrongful conduct on the part of the defendants. The complaint names as defendants Dalraida Health Center, Inc. ("Dalraida"), and Nina Ferguson, the administrator of a nursing home operated by Dalraida, and it describes a number of fictitiously named defendants. Count one alleges:
"Prior to December 23, 1995, Plaintiff's Decedent, Rochelle S. Loftin, entered into an express or implied contract with Defendant Dalraida Health Center whereby, for consideration duly paid by her or on her behalf, Dalraida Health Center was to provide her a place of residence and to provide her food and personal care. By the terms of such contract, Defendant Dalraida Health Center expressly or impliedly agreed or warranted to use reasonable care and diligence in providing the personal care of Plaintiffs Decedent, and to exercise reasonable care in maintaining the personal safety and general health and welfare of Plaintiffs Decedent. Pursuant to such contract, Plaintiff's Decedent was entrusted to Dalraida Health Center's sole custody and care.
"On or about December 23, 1995, the named defendants ... breached the terms of the foregoing warranty and/or contract, by willfully, wrongfully, and/or recklessly administering a [gastrostomy tube, or `G-Tube'] feeding of `Jevity' instead of administering Plaintiff's Decedent's prescribed G-Tube feeding of `Glucerna,' a specialized nutrition with fiber for patients with abnormal glucose tolerance, which had been ordered for her diabetic condition.
"As a proximate consequence of failing to administer the prescribed G-Tube feeding to Plaintiffs Decedent and such breach of contract or warranty, Plaintiffs Decedent was caused to suffer an adverse reaction resulting in great pain and physical suffering, severe mental anguish and/or emotional distress, and death."
Count two alleges that the defendants were negligent, wanton, or reckless in the following respects:
"a. Defendants failed to use reasonable care in administering the prescribed G-Tube feeding to Plaintiffs Decedent at Dalraida Health Center;
". . . .
"c. Defendants failed to monitor and chart the physical condition of Plaintiffs Decedent during the administration of the wrong G-Tube feeding, and failed to correctly identify and chart the type of G-Tube feeding administered to Plaintiff's Decedent at Dalraida Health Center;
"d. Defendants failed to report any and all adverse and/or life-threatening changes in the physical condition of *889 Plaintiffs Decedent, Rochelle S. Loftin, during the administration of the wrong G-Tube feeding to the Director of Nursing and/or the Assistant Director of Nursing, to the Plaintiffs Decedent's personal physician and/or to the Medical Director of Dalraida Health Center; and to Mrs. Loftin's sponsor, Willie B. McCollough, the Plaintiff in this action;
"e. Defendants failed to screen, or improperly screened, and/or were otherwise negligent, wanton or reckless in hiring nursing care personnel at Dalraida Health Center;
"f. Defendants failed to properly and adequately train, supervise, and monitor the performance of, evaluate, and/or discipline their nursing care personnel at Dalraida Health Center;
"g. Defendants assigned personnel to give care to Plaintiff's Decedent who were not competent or who were unfit to provide and/or incapable of providing adequate nursing care at Dalraida Health Center;
"h. Defendants understaffed or otherwise failed to provide sufficient nursing personnel to provide all necessary nursing care to Plaintiff's Decedent at Dalraida Health Center in conjunction with the needs of other residents there.

"The foregoing acts and omissions reflect and proximately result from Defendants' systemic [sic] failure to adopt, promulgate, monitor and/or enforce policies and procedures at Dalraida Health Center to prevent or minimize the risk of such acts and omissions and the reasonably foreseeable harm and risk of harm and/or death proximately caused thereby.

"As a direct and proximate result of such negligent, grossly negligent, wanton, reckless, malicious and/or intentional conduct, Defendants caused Plaintiffs Decedent to suffer severe bodily harm, including great pain and physical suffering and severe mental anguish and/or emotional distress."
(Emphasis added.)
Count three realleges the preceding allegations and seeks damages for the wrongful death of Ms. Loftin. Count four alleges suppression, count five alleges fraud, and count six alleges conspiracy; these three counts relate to the defendants' communications, or lack thereof, with Ms. McCollough about the cause of Ms. Loftin's death. Counts four, five, and six were dismissed, and are not at issue here.
Ms. McCollough filed interrogatories, notices of depositions, and requests for production. Dalraida objected to this discovery, and Ms. McCollough filed a motion to compel production. Ms. McCollough argued that, to the extent § 6-5-551 purports to limit the discovery in a medical liability action, it is unconstitutional, and she served the attorney general with a copy of the motion making this argument. After a hearing, the circuit court denied the constitutional challenge and directed the parties to attempt to resolve their discovery disputes. Dalraida produced some documents, but continued to object that § 6-5-551 precluded discovery of other documents and information.
After a further hearing, the circuit court granted Dalraida's request for a protective order as to the matters that are the subject of the following interrogatories and requests for production:
"Please describe in detail any previous and subsequent incidents from 1990 through the present of which defendant is aware which occurred in substantially the same way or in a similar way as the incident made the basis of this lawsuit.
"Please produce complete and legible copies of all documents pertaining to investigations relating to alleged abuse, mistreatment and/or neglect of resident(s) or to the health, safety, and/or welfare of resident(s) which have been initiated against you and/or which you *890 have conducted for the years 1990 to the present.
"Please produce complete and legible copies of each and every letter, note, [memorandum], or other document and communication received by you relating to complaints about resident care, mistreatment or abuse by nursing personnel for the years 1990 through the present.
"Please produce complete and legible copies of all disciplinary reports, memoranda, notes, letters or other documents and communications relating to physicians and nursing personnel working the day, evening, and night shifts from January 1, 1990 through December 31, 1995.
"Please produce complete and legible copies of any and all employee complaints communicated to you, including all complaints communicated to you by memoranda, letter, note or any other form of document or communication from January 1, 1990 through December 31, 1995.
"Please produce complete and legible copies of all nursing personnel evaluations for the years 1992 through the present.
"Please produce complete and legible copies of personnel records for all nursing personnel employed by you at any time during the years 1990 through the present, and if any nursing personnel worked at more than one (1) of your facilities, please give the names of the facilities at which he or she worked, including his or her dates of employment at each such facility."
In granting a protective order as to these matters, the circuit court relied upon Ex parte Northport Health Service, Inc., 682 So.2d 52 (Ala.1996). In Northport Health Service, this Court first held void the circuit court's ruling that § 6-5-551 is unconstitutional, for failure of the plaintiff to serve the attorney general. Next, it held that, on the merits, the circuit court's discovery order should be vacated. The Court noted that the plaintiff had alleged "that employees of Northport's nursing home were abusive to Pearl Smith while she was a resident there" and that "[t]he discovery sought in this case, and to which Northport objects, is essentially `pattern and practice' evidence." 682 So.2d at 55. We note that three Justices dissented.
In contrast, the discovery sought by Ms. McCollough is not sought as pattern-and-practice evidence, but is sought for the sake of showing negligence, wantonness, willfulness, or breach of a contractual duty to provide adequate care by Dalraida Health Center in its hiring, training, staffing, etc., which negligence, wantonness, willfulness, or breach, the plaintiff alleges, proximately caused the death of her grandmother. The items sought would be relevant to these allegations, and much of the information in those items would be necessary to prove them. Ms. McCollough alleges that the death of her grandmother was proximately caused by the "systemic failure" of Dalraida to provide procedures to minimize the risk of harmful acts such as those that led to Ms. Loftin's death, and by understaffing, hiring unqualified persons, and failing to train, supervise, and discipline them. To prove these allegations, particularly as to wanton or willful misconduct, Ms. McCollough would have to prove facts that gave Dalraida notice or knowledge of the inadequacy of its procedures and its staffing.
To the extent Ms. McCollough alleges that Dalraida's employees were incompetent and that Dalraida knew of their incompetence, her allegations may be analogized to a claim alleging negligent entrustment.[1] In such a claim, the plaintiff must prove that there was a negligent entrustment of a chattel (such as, perhaps, the G-Tube?) to an incompetent, which *891 negligent entrustment proximately caused injury to the plaintiff or the plaintiff's decedent. See, e.g., Pryor v. Brown & Root USA, Inc., 674 So.2d 45 (Ala.1995); Matkin v. Country Skillet Poultry Co., 514 So.2d 1356 (Ala.1987); Dunaway v. King, 510 So.2d 543 (Ala.1987); Wilbanks v. Brazil, 425 So.2d 1123 (Ala.1983); Brown v. Vanity Fair Mills, Inc., 291 Ala. 80, 277 So.2d 893 (1973). Our point is not that Ms. McCollough is proceeding, or might, after discovery, proceed, on a theory of negligent entrustment; our point is that the notice or knowledge of incompetence that is an element of negligent entrustment is similar to the allegations of Dalraida's notice or knowledge of the alleged incompetence of its staff, or of the inadequacy of its own safeguards, which allegations form an element of some of Ms. McCollough's claims.
Indeed, the Court of Civil Appeals has addressed an allegation of negligent hiring outside the context of negligent entrustment. In Nash v. Segars, 682 So.2d 1364 (Ala.Civ.App.1996), Brooks, an employee of John Segars Air Control Company, burglarized and burned the residence of the Nashes three days after having visited their residence in the course of his employment with Segars. The Nashes alleged that Segars was negligent in hiring Brooks, because he had been convicted in the year before Segars hired him of burglary, car theft, and theft of a gun. The Court of Civil Appeals affirmed a summary judgment for Segars, holding that Brooks had not been acting within the line and scope of his employment when he committed the burglary and arson.
"In order to prevail in a negligent hiring case, a plaintiff must show that an employee was acting within the line and scope of his employment. Brown v. Vanity Fair Mills, Inc., [supra] ...."
682 So.2d at 1365. Thus, although the Nashes had not presented a meritorious claim, the Court of Civil Appeals took for granted that such a claim could lie if the employee was acting in the line and scope of his employment.
In Brown v. Vanity Fair Mills, supra, the Court stated:
"While it has been held that an employer has a duty to exercise reasonable care for the safety of his customers, patrons, or other invitees, and in fulfilling this duty he must use due care to avoid the selection or retention of an employee... he knows or should know is a person unworthy, by habits, temperament, or nature, to deal with the persons invited to the premises by the employer, we do not think that rule is applicable here."
291 Ala. at 82, 277 So.2d at 895, citing C.S. Patrinelis, Annotation, Assault by Servant, 34 A.L.R.2d 372, 390 (1954). The Court did not clearly adopt this rule, and certainly not outside the context of an assault by an employee on a patron or other invitee, but the principle stated there is sound and could be applicable to Ms. McCollough's allegations that Dalraida was negligent or wanton in hiring, training, scheduling, supervising, and disciplining its employees, and through its negligence or wantonness in that regard proximately contributed to Ms. Loftin's injuries and death.
These allegations of wrongful conduct would require proof that Dalraida had notice or knowledge of the alleged increased risk of harm due to its alleged "systemic failure" to provide for adequate staffing and other safeguards. The degree of culpability of Dalraida's conduct would be directly related to the number of similar incidents, because a large number of similar incidents that could be traced to the alleged "systemic failure" would tend to show wanton or even willful disregard for the safety of the persons entrusted to Dalraida's care. Thus, the requested discovery is directly relevant to the wrongs alleged in Ms. McCollough's complaint.
Ex parte Northport. Health Service, supra, is distinguishable on the ground that the argument in that case did not present a view of the complaint as alleging negligence more broadly than in the actual *892 events leading to the injuries at issue; the theory on which discovery was sought was that "pattern and practice" evidence would be discoverable regarding other acts as to other residents:
"Sanders sought discovery of personnel documents, including disciplinary records and evaluations, and documents relating to `other acts' evidence, specifically, `evidence of acts of abuse, mistreatment or neglect of residents in the nursing home facilities other than those that resulted in the severe bruising, hospitalization and death of Pearl Smith."
682 So.2d at 53.
Similarly, the argument that is made here was not made in Ex parte Golden, 628 So.2d 496 (Ala.1993). There, the question was whether Golden's fraud allegations came within the ambit of the Medical Liability Act; the plaintiff did not argue that the pattern-and-practice evidence would be discoverable even if the complaint was governed by that Act. "The parties agree that if the Alabama Medical Liability Act applies, the trial court correctly disallowed discovery of any other alleged instances of fraudulent behavior by [the defendant doctor]." 628 So.2d at 497. The plaintiff in Golden, therefore, made no argument that, if the Medical Liability Act applied, § 6-5-551 nevertheless did not apply to the discovery at issue there.
We note that Montgomery Health Care Facility, Inc. v. Ballard, 565 So.2d 221 (Ala. 1990), is not dispositive of the issues here. In Ballard, this Court held that the circuit court had not erred in admitting into evidence reports compiled by the Alabama Department of Public Health. The facts in Ballard occurred before the effective date of § 6-5-551, which, in addition to requiring specific pleading and limiting discovery, prohibits the plaintiff "from introducing at trial evidence of any other act or omission." Thus, Ballard is distinguishable because it was not decided under § 6-5-551. Furthermore, Ballard is distinguishable because of the nature of the evidence at issue there. In a motion to supplement the record, McCollough has provided this Court with copies of nine documents entitled "Statement of Deficiencies and Plan of Correction" that were issued to Dalraida Health Center by either the United States Department of Health and Human Services or the Alabama Department of Public Health. These may well be the kind of reports that were admitted in Ballard. However, these are government-generated documents; the requests for production at issue here ask principally for internal documents. Even if the Medicare and Medicaid laws preempt § 6-5-551 as to these public records, the discovery requests at issue here would not, on the whole, be affected.
Nevertheless, Ballard is authority for our decision here in at least one respect. The Court there held, citing Flint City Nursing Home, Inc. v. Depreast, 406 So.2d 356 (Ala.1981), that "evidence of notice to a defendant of an alleged dangerous condition or defect can be relevant to the issue of negligence and is admissible if the alleged defect proximately caused or contributed to the injury involved." Ballard, 565 So.2d at 223. Ballard and Depreast therefore support the theory of liability alleged in Ms. McCollough's complaint.
For the reasons stated above, Ms. McCollough's discovery requests are pertinent to the allegation in her complaint of wrongful conduct proximately causing or contributing to Ms. Loftin's death.[2] Because we hold that the matters are discoverable within the terms of § 6-5-551, we *893 pretermit consideration of the argument that § 6-5-551 is unconstitutional.
WRIT GRANTED.
HOOPER, C.J., and ALMON, SHORES, KENNEDY, and COOK, JJ., concur.
HOUSTON, J., concurs specially.
MADDOX, SEE, and LYONS, JJ., dissent.
HOUSTON, Justice (concurring specially).
While I join the per curiam opinion, I concur with that portion of Justice Lyons's dissent that addresses the constitutionality of Ala.Code 1975, § 6-5-551. In my opinion, § 6-5-551 is not unconstitutional for any of the reasons asserted by McCollough.
LYONS, Justice (dissenting).
In actions against a health-care provider, the legislature has prohibited discovery of evidence regarding acts or omissions other than those alleged in the complaint, and it has required that the plaintiffs complaint be substantiated by "a detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable to plaintiff." § 6-5-551, Ala.Code 1975. The complaint here contains general allegations of wrongdoing on the part of Dalraida in connection with its screening, training, and assigning personnel, as well as its understaffing of the facility or otherwise having caused a "systemic" failure to enforce policies that minimize the risk of wrongdoing. If these allegations rose to the level of "a detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable to plaintiff," then the discovery at issue would be authorized by § 6-5-551. In Mikkelsen v. Salama, 619 So.2d 1382 (Ala.1993), this Court held that § 6-5-551 required that a defendant be given fair notice of the allegedly negligent acts and that that notice identify the time and place those acts occurred and the resulting harm. McCollough's allegations are far less specific than those approved in Mikkelsen, and, hence, are beyond the scope of discovery authorized by the statute.
Because I conclude that the discovery sought by McCollough is prohibited by the statute, I also address the issue regarding the constitutionality of the statute. I find no violation of Art. III, § 43, Ala. Const. of 1901 (separation of powers), because the Constitution allows the legislature to enact rules governing procedure. § 6.11, Amend. No. 328, Ala. Const. of 1901. Because I find no equal-protection clause in the Alabama Constitution, I will refrain from making an equal-protection analysis. See Smith v. Schulte, 671 So.2d 1334, 1348 (Ala.1995) (Houston, J., dissenting), cert. denied, 517 U.S. 1220, 116 S.Ct. 1849, 134 L.Ed.2d 950 (1996). A plaintiffs right to a remedy is secured by Art. I, § 13, Ala. Const. of 1901. Nevertheless, I am persuaded that the authority of the Court to act in regard to alleged violations of § 13 is limited to instances in which the legislature takes away a remedy after a cause of action has accrued and that it does not extend to instances in which, as here, the legislature modifies or limits a remedy. Mayo v. Rouselle Corp., 375 So.2d 449 (Ala.1979). Finally, I find no due-process violation. Section 6-5-551 affords a proceeding before a tribunal, with notice and an opportunity to be heard. I decline to indulge in a substantive-due-process analysis that would lead to striking down a statute in a situation where I might disagree with the result that would be reached upon application of the statute. Our inquiry should be limited to questions of legislative power and should not include questions of expediency or wisdom. Alabama State Federation of Labor v. McAdory, 246 Ala. 1, 9-10, 18 So.2d 810 (1944), cert. dismissed, 325 U.S. 450, 65 S.Ct. 1384, 89 L.Ed. 1725 (1945).
MADDOX and SEE, JJ., concur.
NOTES
[1] In this discussion, we express no opinion as to how the Medical Liability Act would govern Ms. McCollough's attempt to prove a breach of the standard of care. We discuss the principles of negligent hiring and negligent entrustment simply as illustrating the plaintiff's theory of Dalraida's wrongful conduct and why the discovery sought is pertinent thereto.
[2] We note that several of the discovery requests seek records "from 1990 through the present." The parties have not briefed the question whether such discovery should be allowed only for the period up until the time of Ms. Loftin's death, as showing notice and knowledge on the part of Dalraida up to that point, or until some time thereafter, as providing circumstantial evidence of Dalraida's overall or "systemic" negligent, wanton, or willful failure to provide due care. Therefore, we leave that question for further proceedings in the circuit court.