Coosa Valley Health Care, Inc. ("Coosa Valley"), one of the defendants in a civil action pending in the Etowah Circuit Court, petitions for a writ of mandamus directing Judge Donald W. Stewart to vacate or amend his discovery orders of October 27, 1999, and December 27, 1999, compelling Coosa Valley to produce certain information and materials requested by the plaintiff. Coosa Valley contends that discovery of this information and these materials would contravene § 6-5-551, *Page 210 
Ala. Code 1975, a portion of the Medical Liability Act of 1987.
 I.
In 1991, after experiencing complications from a stroke, Lucille A. Roper became a resident of a nursing-home facility operated by Coosa Valley. Mrs. Roper resided at the Coosa Valley facility from 1991 until February 15, 1999, when she was discharged to Gadsden Regional Hospital. On March 1, 1999, Mrs. Roper was admitted to McGuffey's Nursing Home. McGuffey's Nursing Home is not affiliated with Coosa Valley. Mrs. Roper resided at McGuffey's until March 23, 1999, when she was again admitted to Gadsden Regional Hospital; she died at that hospital on March 24, 1999. At the time of her death, Mrs. Roper was 91 years old.
On March 22, 1999, two days before her death, Mrs. Roper, acting by and through her son, S.W. Roper, sued Coosa Valley. The complaint described a number of fictitiously named defendants. Following Mrs. Roper's death, her son filed an amended complaint, adding McGuffey's and Gadsden Regional Hospital as defendants. On September 24, 1999, the trial court ordered that S.W. Roper be substituted as plaintiff in this action, and a second amended complaint was filed on October 28, 1999, to effectuate this change.
The complaint alleged, among other things, negligence in the treatment Mrs. Roper received while a resident of the Coosa Valley facility. The complaint alleged that Coosa Valley had provided Mrs. Roper negligent care, and it alleged the following, based on that alleged negligent care:
 "LUCILLE A. ROPER suffered catastrophic injuries, extreme pain, suffering and mental anguish. The scope of severity of the recurrent negligence inflicted upon LUCILLE A. ROPER while under the care of the [Coosa Valley] facility accelerated the deterioration of her health and physical condition beyond that caused by the normal aging process and resulted in the physical and emotional trauma described below:
 "a) Bedsores, otherwise known as decubitus ulcers or pressure sores which slowly developed on LUCILLE A. ROPER causing her to undergo otherwise unnecessary surgeries and medical treatments as well as causing excruciating pain, suffering and mental anguish;
 "b) Ulcerated, pus-infiltrated and festering necrotic pressure sores and lesions on the body of LUCILLE A. ROPER which became so grossly infected and contaminated that the wound infection spread into her blood stream;
"c) Sepsis and blood-borne toxic infections;
"d) Malnutrition;
"e) Dehydration;
"f) Urinary Tract Infection;
 "g) All of the above identified injuries as well as the conduct specified below caused LUCILLE A. ROPER to lose her personal dignity; caused her great shame and humiliation; caused extreme and unnecessary pain, degradation, anguish and emotional trauma; and, resulted in the amputation of her leg on November 20, 1998."
As part of the negligence claims, Roper also asserted that Coosa Valley had been negligent in hiring its employees and that it had failed to adequately train and supervise them.
Count one of the complaint alleges that Coosa Valley and certain fictitiously named *Page 211 
defendants were negligent, wanton, or reckless in the following respects:
 "a) The failure to provide sufficient numbers of qualified personnel including nurses, nurse assistants, medication aides, and orderlies (hereinafter `nursing personnel'), to meet the total needs of LUCILLE A. ROPER in conjunction with the needs of other residents of COOSA VALLEY HEALTH CARE.
 "b) The failure to increase the number of nursing personnel at COOSA VALLEY HEALTH CARE to [ensure] that LUCILLE A. ROPER:
"1. received prescribed treatment, medication, and diet;
 "2. received necessary fluids and water to prevent dehydration and infection;
"3. received necessary nutrition.
 "c) The failure to provide nursing personnel sufficient in number to provide proper care to LUCILLE A. ROPER and other residents at COOSA VALLEY HEALTH CARE so as to keep LUCILLE A. ROPER clean and comfortable and to prevent the formation of decubitus ulcers, lesions and sores on her body.
 "d) The failure to provide adequate supervision to the nursing staff so as to assure that LUCILLE A. ROPER received adequate and proper nutrition, fluids, therapeutic diet, sanitary care treatments, medications, repositioning, turning and skin care to prevent the formation of decubitus ulcers, lesions, and sores, decubiti care to prevent infection, and sufficient nursing observation and examination of the responses, symptoms and progress in the physical condition of LUCILLE A. ROPER.
 "e) The failure to adequately assess, evaluate and supervise nurses, [nurses'] aides or assistants, medication assistants, dietary personnel and laundry personnel so as to assure that LUCILLE A. ROPER received good, proper nursing care, in accordance with COOSA VALLEY HEALTH CARE policy and procedures manual, the Rules of the Alabama State Board of Health for nursing facilities, and the regulations of the U.S. Department of Health and Human Services.
 "f) The failure of the Defendants to adequately supervise the Administrator of COOSA VALLEY HEALTH CARE.
 "g) The failure to adequately supervise the Director of Nurses at COOSA VALLEY HEALTH CARE.
 "h) The failure to provide a nursing staff that was properly manned, qualified, trained and motivated.
 "i) The failure to adequately screen, evaluate, and check references, test for competence, and use ordinary care in selecting nursing personnel to work at COOSA VALLEY HEALTH CARE.
 "j) The failure to terminate employees at COOSA VALLEY HEALTH CARE assigned to LUCILLE A. ROPER that were known to be careless, incompetent, unwilling to comply with the policy and procedures of Defendants and the rules and regulations promulgated by the Alabama State Board of Health.
 "k) The failure to assign nursing personnel at COOSA VALLEY HEALTH CARE duties consistent with their education and experience based on: *Page 212 
 "1. LUCILLE A. ROPER'S medication history and condition, nursing and rehabilitative needs;
 "2. The characteristics of the patient population residing in the area of the facility where LUCILLE A. ROPER was a patient; and
 "3. The nursing skills needed to provide care to such patient population.
 "l) The failure to establish, publish and/or adhere to policies for nursing personnel concerning the care and treatment of residents with nursing, medical and psychosocial needs similar to those of LUCILLE A. ROPER.
 "m) The failure to provide and assure an adequate nursing care plan based on the needs of LUCILLE A. ROPER at the time of her admission to COOSA VALLEY HEALTH CARE.
 "n) The failure to provide and assure adequate nursing care plan revisions and modifications as the needs of LUCILLE A. ROPER changed.
 "o) The failure to implement and assure that an adequate nursing care plan for LUCILLE A. ROPER was followed by nursing personnel.
 "p) The failure to adopt adequate guidelines, policies and procedures for:
 "1. investigating the relevant facts, underlying deficiencies or licensure violations or penalties found to exist at COOSA VALLEY HEALTH CARE by the Alabama State Board of Health or any state or federal survey agency;
 "2. the cause of any such deficiencies, violations, or penalties; and
 "3. the method and means for correcting deficiencies or licensure violations or penalties found to exist at COOSA VALLEY HEALTH CARE.
 "q) The failure to adopt adequate guidelines, policies and procedures for determining whether COOSA VALLEY HEALTH CARE had sufficient numbers of nursing personnel which includes nurses, [nurses'] assistants, medication assistants, orderlies and other staff to:
"1. provide 24 hour nursing services;
 "2. meet the needs of residents who are admitted to or remain in the facility;
"3. meet the total nursing needs of patients.
 "r) The failure to adopt adequate guidelines, policies and procedures for documenting, maintaining files, investigating, and responding to any complaint regarding the quantity of patient care, the quality of patient care, or misconduct by employees at COOSA VALLEY HEALTH CARE, no matter whether such complaint derived from a resident of said facility, an employee of the facility or any interested person.
 "s) The failure to take reasonable steps to prevent, eliminate and correct deficiencies and problems in patient care at COOSA VALLEY HEALTH CARE.
 "t) The failure by the members of the governing body of COOSA VALLEY HEALTH CARE to discharge their legal and lawful obligation by:
 "1. assuring that the rules and regulations designed to protect the health and safety of the patients, such as LUCILLE A. ROPER, as promulgated by the Alabama State Board of Health were consistently complied with on an ongoing basis; *Page 213 
 "2. assuring that the patient care policies for Defendants were consistently complied with on an ongoing basis;
 "3. assuring that the policy and procedures manuals for Defendants were updated and modified to address problems which consistently emerged at the facility; and
 "4. responsibly assuring that appropriate corrective measures were implemented to cure problems concerning inadequate patient care.
 "u) The failure to properly assess LUCILLE A. ROPER for the risk of development of decubitus ulcers, lesions and sores on her body.
 "v) The failure to assure and provide adequate turning and positioning of LUCILLE A. ROPER so as to prevent the formation of decubitus ulcers, lesions, and sores on the body of LUCILLE A. ROPER and to prevent harm to her during such positioning.
 "w) The failure to provide a proper mattress and bedding for LUCILLE A. ROPER, protective devices and positioning devices.
 "x) The failure to provide and assure that LUCILLE A. ROPER received necessary toileting and assistance with her urinal.
 "y) The failure to provide and assure that LUCILLE A. ROPER received adequate bathing daily and after each incontinent episode so as to prevent urine contact and fecal contact with her skin for medically unsafe periods of time.
 "z) The failure to provide and assure that LUCILLE A. ROPER received adequate sanitary care to prevent infection.
 "aa) The failure to assure and provide a change of bed linens to LUCILLE A. ROPER as needed to prevent urine contact and fecal contact for medically unsafe periods of time.
 "bb) The failure to provide and assure that LUCILLE A. ROPER received adequate skin care so as to prevent the formation of decubitus ulcers, lesions and sores, on her body.
 "cc) The failure to provide and assure that LUCILLE A. ROPER received adequate observation and examination for skin breaks for decubiti so as to timely and adequately intervene to prevent the formation of ulcerated, pus-infiltrated, festering and necrotic sores and lesions on her body.
 "dd) The failure to assure and provide LUCILLE A. ROPER with adequate nursing care, treatments and medication for decubiti after the development of decubiti by LUCILLE A. ROPER.
 "ee) The failure to assure and provide care, treatment and medication in accordance with [physicians'] orders.
 "ff) The failure to provide and assure that LUCILLE A. ROPER received adequate water and fluids.
 "gg) The failure to provide and serve to LUCILLE A. ROPER sufficient food and nutritional supplement to meet her nutritional needs.
 "hh) The failure to increase caloric and protein intake of LUCILLE A. ROPER after the development and/or deterioration of a decubitus ulcer.
 "ii) The failure to maintain medical records which contained sufficient information to justify the diagnosis and treatment and to document the *Page 214 
results, including, at a minimum, documented evidence of assessments of the needs of LUCILLE A. ROPER, of establishment of appropriate plans of care and treatment, and the care and services provided.
 "jj) The failure to appropriately monitor LUCILLE A. ROPER and recognize significant signs and symptoms of change in her health condition.
 "kk) The failure to properly notify the family and/or guardian of LUCILLE A. ROPER of significant changes in her health status.
 "ll) The failure to notify the attending physician of LUCILLE A. ROPER of significant changes in her physical condition, to wit[:] the development of decubitus ulcers, sores, and/or lesions and concerning persistent unresolved problems relating to the care and physical condition of LUCILLE A. ROPER.
 "16. A reasonably prudent nursing home, operating under the same or similar conditions, would not have failed to provide the important care listed above. Each of the foregoing acts of negligence on the part of the defendants operating separately, in combinations of two or more, or jointly and cumulatively, was a proximate cause of LUCILLE A. ROPER'S injuries and damages. LUCILLE A. ROPER'S injuries and damages were all foreseeable to each of the named defendants and fictitious defendants.
 "WHEREFORE, as a direct and proximate result of such negligent, grossly negligent, wanton, reckless, malicious and/or intentional conduct, plaintiff asserts a claim for judgment for all compensatory damages including, but not limited to, medical expenses, physical pain, suffering, mental anguish, disability, disfigurement, aggravation of a previously existing condition, loss of enjoyment of life, and punitive damages against the defendants, jointly and severally, and all fictitious . . . defendants in an amount to be determined by the jury, plus costs and other relief to which LUCILLE A. ROPER is entitled by law."
The plaintiff sought discovery from Coosa Valley, by serving on it interrogatories and requests for production. As to some of the requests and interrogatories, Coosa Valley provided the requested discovery, but it filed objections to others, claiming that they violated § 6-5-551, Ala. Code 1975; § 22-21-8; the work-product doctrine; the attorney-client privilege; and general principles of relevancy, materiality, and overbreadth. On July 20, 1999, the plaintiff moved to compel discovery. After conducting a hearing, the trial court entered an order, on October 27, 1999, stating:
 "This cause coming to be heard on the Plaintiff's Motion to Compel Discovery and upon consideration thereof; it is,
"ORDERED as follows:
 "1. As to Plaintiff's Interrogatory number two (2), the Defendant is directed to furnish the names of all employees who were employed at Coosa Valley Health Care Center for the period between August 1997 through November 1998.[1] *Page 215 
 "2. As to Plaintiff's Interrogatory number five (5), Plaintiff's Motion to Compel is hereby denied.
 "3. As to Plaintiff's Interrogatory number sixteen (16), the Defendant is directed to furnish the names of all members of the governing body for Coosa Valley Health Care Center during the period of Lucille A. Roper's residency.
 "4. As to Plaintiff's Request for Production, request number one (1), the Defendant is directed to furnish a legible copy of the original chart for Lucille A. Roper.
 "5. As to Plaintiff's [Requests] for Production six (6), seven (7), eight (8), nine (9), and ten (10), the Defendant is directed to furnish material which is the subject of those requests.[2]
 "6. As to Plaintiff's Request to [sic] number eleven (11), the Defendant is protected from furnishing such request.
 "7. As to the Plaintiff's Request number 30(4), the Defendant is directed to furnish the materials requested in such request for production with the proviso that the material shall cover the period from August 1997 to November 1998."[3]
Coosa Valley moved the trial court to reconsider its order of October 27, 1999. After conducting another hearing, in which Mr. Roper argued that this Court's decision in Ex parte McCollough, 747 So.2d 887 (Ala. 1999), mandated that Coosa Valley furnish the requested discovery, the trial court denied Coosa Valley's motion to reconsider. *Page 216 
On January 18, 2000, Coosa Valley filed this petition for the writ of mandamus, requesting that this Court direct the trial court to "vacate the Order or strike those paragraphs and amend the Order to reflect same, thus relieving [Coosa Valley] — as is required by law — from compliance with Paragraphs One (1), Five (5), and Seven (7) of the Order." Coosa Valley does not request relief from paragraphs two, three, four, and six, of the trial court's order. Thus, we will not review those portions of the order.
 II.
Rule 26, Ala.R.Civ.P., governs the discovery of information in civil actions. When a dispute arises over discovery matters, the resolution of the dispute is left to the sound discretion of the trial court. "Discovery matters are within the trial court's sound discretion, and its ruling on those matters will not be reversed absent a showing of abuse of discretion and substantial harm to the appellant." Wolff v. ColonialBank, 612 So.2d 1146, 1146 (Ala. 1992) (citations omitted). See also Justice Maddox's dissent in Ex parte Hicks, 727 So.2d 23, 33 (Ala. 1998); the holding in the majority opinion in Hicks was overruled by Exparte Henry, 770 So.2d 76, 81 (Ala. 2000).
The writ of mandamus is a drastic and extraordinary remedy, to be issued only when there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court. Ex parteHorton, 711 So.2d 979, 983 (Ala. 1998) (citing Ex parte United Serv.Stations, Inc., 628 So.2d 501 (Ala. 1993)); Ex parte Alfab, Inc.,586 So.2d 889, 891 (Ala. 1991) (citing Martin v. Loeb Co., 349 So.2d 9
(Ala. 1977)). However, "`[t]he right sought to be enforced by mandamus must be clear and certain with no reasonable basis for controversy about the right to relief,'" and "`[t]he writ will not issue where the right in question is doubtful.'" Ex parte Bozeman, 420 So.2d 89, 91 (Ala. 1982) (quoting Ex parte Dorsey Trailers, Inc., 397 So.2d 98, 102 (Ala. 1981)). "A petition for the writ of mandamus is the proper means for obtaining review of the question `whether a trial court has abused its discretion in ordering discovery, in resolving discovery matters, and in issuing discovery orders.'" Ex parte Water Works Sewer Bd. of the City ofBirmingham, 723 So.2d 41, 42 (Ala. 1998) (quoting Ex parte Compass Bank,686 So.2d 1135, 1137 (Ala. 1996)).
 A.
Coosa Valley first contends that the complaint contains only general allegations of wrongdoing and, thus, does not comply with the specificity requirements of § 6-5-551, Ala. Code 1975. We disagree. It is evident from a reading of the excerpt we have quoted above from the complaint that the plaintiff's allegations are more specific than the allegations this Court held to be sufficient in Ex parte McCollough, 747 So.2d 888-89. See also Mikkelsen v. Salama, 619 So.2d 1382 (Ala. 1993); Baptist Med. Ctr. Montclair v. Wilson, 618 So.2d 1335 (Ala. 1993). Moreover, the complaint alleges ongoing breaches of the standard of care, including allowing the development of conditions that develop over a extended period, such as malnutrition, dehydration, bedsores, and pressure sores. Thus, the complaint is sufficient to state a cause of action. However, the plaintiff remains under an obligation to "amend his complaint timely upon ascertainment of new or different acts or omissions upon which his claim is based." § 6-5-551. *Page 217 
 B.
Coosa Valley next argues that § 6-5-551 prevents the plaintiff Mr. Roper from discovering evidence of other acts or omissions. Coosa Valley contends that the discovery Mr. Roper may seek is limited to information and materials related to the specific acts or omissions alleged in the complaint, citing Ex parte Northport Health Service, Inc., 682 So.2d 52
(Ala. 1996), as support for its claim. Mr. Roper argues that he is entitled to discovery of the information he requested that may relate to other acts or omissions because, he argues, the rule prohibiting such discovery does not apply to the claims alleging that Coosa Valley negligently, recklessly, and wantonly screened, hired, trained, supervised, and retained its employees. He cites Ex parte McCollough, supra, 747 So.2d 887, arguing that a claim alleging negligent hiring, training, and supervision is "separate and distinct" from a claim alleging a "breach of the standard of care." See § 6-5-548, Ala. Code 1975.
Coosa Valley recognizes that its contention is contrary to our decision in Ex parte McCollough, supra, but argues that that decision — which held that evidence similar to that sought in Ex parte NorthportHealth Service was not pattern-and-practice evidence, but was, instead, discoverable as necessary for the plaintiff to prove a "systemic-failure" claim — was a departure from the well-reasoned analysis of its predecessors and the plain intent of the Legislature. In effect, what Coosa Valley seeks in this mandamus petition is an overruling of this Court's decision in Ex parte McCollough.
This Court's decision in Ex parte McCollough recognized that an action against a health-care provider alleging negligent hiring, training, and supervision is an "action . . . for breach of the standard of care" and is thus governed by § 6-5-551; however, we concluded that the requested information was "discoverable within the terms of § 6-5-551." 747 So.2d at 892. Since we decided McCollough, the Legislature has amended § 6-5-551. That section, as amended, provides (with some of the amendatory language emphasized):
 "In any action for injury, damages, or wrongful death, whether in contract or in tort, against a health care provider for breach of the standard of care, whether resulting from acts or omissions in providing health care, or the hiring, training, supervision, retention, or termination of care givers, the Alabama Medical Liability Act shall govern the parameters of discovery and all aspects of the action. The plaintiff shall include in the complaint filed in the action a detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable to plaintiff and shall include when feasible and ascertainable the date, time, and place of the act or acts. The plaintiff shall amend his complaint timely upon ascertainment of new or different acts or omissions upon which his claim is based; provided, however, that any such amendment must be made at least 90 days before trial. Any complaint which fails to include such detailed specification and factual description of each act and omission shall be subject to dismissal for failure to state a claim upon which relief may be granted. Any party shall be prohibited from conducting discovery with regard to any other act or omission or from introducing at trial evidence of any other act or omission."
(Emphasis added.)
The amendment to § 6-5-551 became effective May 9, 2000. Although Mr. Roper's cause of action accrued, and this action was commenced, before the effective *Page 218 
date of the amendment, "that amendment applies to all pending actions because it is remedial in nature and contains no clear language indicating that the Legislature did not intend it to have a retroactive effect." Ex parte Ridgeview Health Care Ctr., Inc., 786 So.2d 1112,1114 n. 1 (Ala. 2000).
This Court recently addressed this same issue in Ex parte RidgeviewHealth Care Center:
 "[The defendant] Ridgeview also asserts that the trial court erred in ordering it to respond to interrogatory number 6 and requests for production no. 2, no. 3, no. 9, no. 11, no. 13, and no. 14. Ridgeview argues that the information and documents sought by these discovery requests concern `other act[s] or omission[s],' which are barred from discovery by § 6-5-551. Ridgeview, however, acknowledges that the information and documents sought are discoverable under this Court's decision in Ex parte McCollough. Ridgeview simply asks this Court to overrule Ex parte McCollough because, it argues, that decision conflicts with the prohibition in § 6-5-551 against `other acts' evidence.
 "We agree that these discovery requests are prohibited by § 6-5-551, as amended. This Court's holding in Ex parte McCollough that a plaintiff's allegation of a health-care provider's `systemic failure' permits the plaintiff to discover other acts or omissions has been superseded by the Legislature's amendment to § 6-5-551. Section 6-5-551, as amended, makes it clear that in an action against a health-care provider, based on acts or omissions in the `hiring, training, supervision, retention, or termination of [the health-care provider's employees],' the plaintiff is entitled only to discovery concerning those acts or omissions `detailed specifica[lly] and factual[ly] descri[bed]' in the complaint and `alleged by [the] plaintiff to render the health care provider liable to [the] plaintiff.' Thus, if the plaintiff alleges that the defendant health-care provider breached the standard of care by negligently training, supervising, retaining, or terminating an employee or by negligently entrusting an employee with an instrumentality, then the plaintiff may discover information only concerning those acts or omissions by those employees whose conduct is detailed specifically and factually described in the complaint as rendering the health-care provider liable. Consequently, [the plaintiff] Hayes is not entitled to discovery regarding acts or omissions by Ridgeview in the hiring, training, supervising, retaining, or terminating of employees other than those employees whose acts he detailed specifically and factually described in his complaint as rendering Ridgeview liable."
786 So.2d at 1116-1117.
Based on our decision in Ex parte Ridgeview Health Care Center, we conclude that paragraphs five and seven of the order dated October 27, 1999, were too broad. Mr. Roper is entitled to discovery of information involving the provision of care and/or services to Lucille Roper, but not to other persons. Thus, to the extent that in paragraphs five and seven the trial court compeled Coosa Valley to produce materials involving persons other than Lucille Roper, the trial court abused its discretion. Thus, Coosa Valley has shown a clear legal right to have those two paragraphs vacated to the extent they require production of information regarding the care and treatment of anyone other than Lucille Roper.[4] *Page 219 
With regard to paragraph one of the October 27, 1999, order, we do not find that the trial court abused its discretion in compelling Coosa Valley to produce a list of its employees. As Mr. Roper explained, the purpose for requesting a list of employees was "to identify all individuals who either witnessed or had the opportunity to witness the circumstances, events or occurrences, [that were] relevant to the facts and issues in the instant case." Given the allegations contained in Mr. Roper's claims of "systemic failure," not all of the claims involve care by medical personnel, and, thus, it is likely that the employees to which some of those claims relate would not be named in Lucille Roper's medical records. Thus, for Coosa Valley to produce a list of employees who worked at its nursing facility during the last four years Lucille Roper resided there would be a reasonable way for Mr. Roper to investigate and prove his claims of negligence, wantonness, willfulness, and/or breach of a contractual duty by Coosa Valley to provide adequate hiring, training, staffing, etc., of its personnel. Accordingly, we conclude that the trial court did not abuse its discretion in ordering Coosa Valley to furnish the information contained in interrogatory number two.
 C.
Coosa Valley contends that the trial court abused its discretion by ordering it to furnish the relevant documentation for a four-year period, as opposed to a two-year period. Coosa Valley argues that the trial court ignored the applicable two-year statute of limitations, § 6-5-482, Ala. Code 1975. Its argument appears to be that because Mr. Roper could not assert a claim based on events occurring before March 22, 1997, he is barred from discovering any information or documents relating to events occurring before that date. Given that Mr. Roper's claim was one of "systemic failure," the applicable statute of limitations is not dispositive of questions regarding the scope or propriety of his discovery requests. Because this case is before us on a mandamus petition, the materials presented for our review are limited; thus, we are unable to determine precisely when Mrs. Roper's medical problems began. Based on the pleadings, it is obvious that her condition deteriorated over an extended period of time; thus, we conclude that it was not an abuse of discretion for the trial court to allow discovery for the four-year period preceding Mrs. Roper's removal from Coosa Valley's facility.
 D.
Coosa Valley also argues that the information at issue was not discoverable because, Coosa Valley says, it is "quality-assurance information" and is therefore privileged under § 22-21-8, Ala. Code 1975. However, as this Court noted in Ex parte St. Vincent's Hospital,652 So.2d 225, 230 (Ala. 1994), the burden of proving that a privilege exists and proving the prejudicial effect of disclosing the information is on the party asserting the privilege. Coosa Valley has offered no evidence to show that the information sought was maintained for purposes of quality assurance or for any other purpose covered by § 22-21-8. Compare Ex parte Qureshi, 768 So.2d 374 (Ala. 2000); Ex parteKrothapalli, 762 So.2d 836 (Ala. 2000) (in each of those cases, the petitioner submitted evidence in the form of affidavits establishing that the information sought by the *Page 220 
discovery requests was privileged). Accordingly, Coosa Valley did not meet its burden of proving that the information sought by the discovery requests was privileged.
 III.
To the extent paragraphs five and seven of the October 27, 1999, order require Coosa Valley to disclose information related to persons other than Lucille Roper, the circuit court is directed to vacate those paragraphs. To the extent of the relief granted by the preceding sentence, the petition is granted. Otherwise, it is denied.
PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.
Hooper, C.J., and Maddox, Houston, Lyons, and England, JJ., concur.
Johnstone, J., concurs specially.
See, J., concurs in the result.
[1] Plaintiff's Interrogatory number 2 reads as follows:
 "Please identify fully all individuals who were employed [by] COOSA VALLEY HEALTH CARE CENTER during the following period of time: the last four (4) years of the residency of LUCILLE A. ROPER; state whether each individual provided any care or services to LUCILLE A. ROPER, and state whether each individual is currently an employee of COOSA VALLEY HEALTH CARE CENTER or COOSA VALLEY HEALTH CARE, INC.
 "The purpose of this interrogatory is to identify all individuals who either witnessed or had the opportunity to witness the circumstances, events or occurrences, which are relevant to the facts and issues in the instant case. This interrogatory is intended to include any caregiver or other employee, including dietary workers, laundry workers, maintenance person or any other person whatsoever."
[2] The plaintiff's requests for production numbered 6 through 10 read as follows:
 "REQUEST NO. 6: Please produce complete and legible copies of all documents pertaining to investigations relating to alleged abuse, mistreatment and/or neglect of residents or to the health, safety, and/or welfare of residents which have been initiated against Defendant and/or which Defendant conducted during the last four (4) years of Plaintiff's [i.e., Mrs. Roper's] residency.
 "REQUEST NO. 7: Please produce complete and legible copies of each and every letter, note, memoranda [sic] or other document and communication received by Defendant relating to complaints about resident care, mistreatment or abuse by nursing personnel during the last four (4) years of Plaintiff's residency.
 "REQUEST NO. 8: Please produce complete and legible copies of all disciplinary reports, memoranda, notes, letters or other documents and communication relating to Physician and nursing personnel working the day, evening, and night shifts during the last four (4) years of Plaintiff's residency.
 "REQUEST NO. 9: Please produce complete and legible copies of any and all employee complaints communicated to Defendant, including all complaints communicated to Defendant by memoranda, letter, note or any other form of document or communication during the last four (4) years of Plaintiff's residency.
 "REQUEST NO. 10: Please produce complete and legible copies of all nursing personnel evaluations during the last four (4) years of Plaintiff's residency."
[3] Plaintiff's request for production number 30(4) requested "All work schedules and time sheets showing the identity, number (quantity), and classification of any nursing personnel, as such term is defined above, for each tour of duty, including relief or pool personnel who worked on any unit or wing in COOSA VALLEY HEALTH CARE where LUCILLE A. ROPER resided during the last four (4) years of her residency."
[4] Coosa Valley also claims that the order compelling discovery must be vacated because it requires the disclosure of confidential patient information, in violation of various state and federal regulations. Because our decision limits discovery to materials involving only the care and treatment of Lucille Roper, this argument is moot.