WISE, Justice.
*1022 The petitioner, the estate of Fredrick O'Brian Elliott, deceased, by and through his personal representative, Sonya Windham ("the estate"), filed a petition for a writ of mandamus asking this Court to direct the Jefferson Circuit Court to vacate its March 7, 2018, order insofar as it denies certain requests for production of documents made by the estate. We grant the petition and issue the writ.
Factual Background and Procedural History
On July 14, 2017, the estate filed a wrongful-death action against Baptist Health System, Inc., d/b/a Princeton Baptist Medical Center ("PBMC"),[1] and Courtney Johnston (hereinafter collectively referred to as "the defendants") and various fictitiously named defendants. The complaint alleged that, on September 7, 2015, Elliott was admitted to Princeton Baptist Medical Center complaining of nausea, vomiting, and gastritis ; that, as part of his treatment, Elliott "was ordered to undergo full bowel rest by having Trans-Peritoneal Nutrition (TPN) administered through a Peripherally Inserted Central Catheter (PICC Line)"; that a PICC line was inserted into Elliott's right arm, which line was used to administer a daily dose of TPN, which came in a sterile bag; and that, despite the treatment, Elliott's symptoms did not subside. The complaint further alleged that, on the morning of September 18, 2015, Courtney Johnston, Elliott's nurse, administered a TPN bag to Elliott; that Elliott continued to experience bouts of nausea and vomiting that interrupted the TPN infusion; that, later that day, while Windham, who is Elliott's mother, was present, Johnston came into Elliott's room and discarded the partially full TPN bag into the trash; that Windham was concerned and questioned Johnston because Elliott had not finished his entire nutritional dose; that Johnston told Windham that she was following doctor's orders; that Windham asked Johnston for the name of the doctor who had ordered the TPN bag to be removed and Johnston stated that she did not know; that Windham asked Johnston to find the doctor so she could talk to him; that Johnston became agitated and left the room; that Johnston returned to the room a few minutes later, took the TPN bag out of the trash can and reconnected it to Elliott's PICC line; and that Johnston apologized to Windham and told her that she had read the order incorrectly. The complaint also alleged that, soon after, Elliott became febrile; that, on September 21, 2015, Elliott's temperature spiked to 102.5º, he was sweating profusely, and he became "profoundly tachycardic and hypertensive"; that blood cultures revealed that Elliott had "a nosocomial infection and was septic with Proteus Mirabilis"; that the contaminated PICC line was later confirmed as the source of Elliott's infection; that Elliott was treated with intravenous antibiotics; that, although Elliott's bacterial infection seemed to resolve, "the damage done to [his] heart from the nosocomial infection was insurmountable"; that Elliott's heart suddenly stopped beating on September 30, 2015; that Elliott could not be resuscitated;
*1023 and that Elliott was pronounced dead at 6:15 p.m. that evening.
The complaint alleged that the defendants and the fictitiously named defendants had failed to discharge their obligations of care to Elliott and that, as a result, Elliott "suffered fatal injuries, extreme pain, suffering, and mental anguish." It also alleged that the defendants' malpractice resulted, in part, "from a systemic failure to adequately document and treat patients" and "a failure to maintain medical records which contained sufficient information to justify the diagnosis and treatment of those patients including" Elliott; that the defendants "failed to document the results, including at a minimum, documented evidence of assessments of the needs of [Elliott], for the establishment of appropriate plans of care and treatment, and for the care and services provided during his treatment as a whole"; and that those acts and omissions occurred as a result of PMBC's "understaffing and/or failure to properly train its staff and/or the incompetence of its employee." The complaint alleged claims of negligence, wantonness, and negligent and/or wanton hiring, training, and supervision. PBMC and Johnston subsequently filed answers to the complaint.
On August 10, 2017, the estate filed its "Second Request for Production to All Defendants," in which it requested:
"1. The entire employment file for Courtney Johnston.
"2. Any and all disciplinary records related to Courtney Johnston.
"3. Any and all training records related to Courtney Johnston.
"4. Any and all nursing policies, procedures, rules, regulations, and training modules related to the use and care of PICC Lines, TPN, and aseptic technique.
"5. Any and all disciplinary records related to any nurse, agent, or employee or any other individual arising from or related to having provided care for Fredrick O'Brian Elliott.
"6. Any and all complaints, reports, inspections, audits, investigations or writing submitted to or received from any licensing agency, accrediting or regulatory agency, body, or governmental entity arising from or related providing care for Fredrick O'Brian Elliott.
"7. Any document, writing, statement, record, related to any internal audits, investigations, root cause analysis, or finding performed by any of the above named defendants arising from or related to providing care for Fredrick O'Brian Elliott."
The defendants filed an "Initial Response (Objections) to [the Estate's] Second Request for Production to All Defendants." With regard to each request contained in Requests 1, 2, 5, 6, and 7, the defendants stated:
"Defendants object to this request for that as it is sufficiently broad that it seeks information that is privileged and not discoverable in this case pursuant to one or more of the following:
"a. Section 22-21-8 of the Code of Alabama [1975]
"b. Section 34-24-58 of the Code of Alabama [1975]
"c. Section 34-24-59 of the Code of Alabama [1975]
"d. Section 6-5-333 of the Code of Alabama [1975]
"e. Section 6-5-551 of the Code of Alabama [1975]."
(Emphasis omitted.) The defendants also asserted that Requests 1 and 2 requested "private personal identifying information." The defendants did not object to Requests 3 and 4. The defendants did not include any additional information or argument regarding those requests.
*1024 On January 4, 2018, the estate filed a "Motion to Compel Defendants to Produce Documents Responsive to [the Estate's] Second Request for Production." In its motion to compel, the estate argued:
"4. As it stands, defendants' objections are nothing more than shot-gun boilerplate responses that have no merit which amount to dilatory tactics and gamesmanship.
"5. Rule 26(b)(6) of the Alabama Rules of Civil Procedure requires any party withholding information on a claim of privilege or work product shall be supported by a description of the document sufficient to be able to contest the claim.
"6. Defendants have not provided a privilege log and they have not set forth why the requested information is over broad, privileged, and not discoverable.[2]
"7. Without defendants' answers, plaintiff will be unfairly prejudiced and cannot adequately prepare for trial.
"[8]. Plaintiff requests that the court order the defendants to produce documents responsive to each of plaintiff's requests and to provide a privilege log with sufficient detail, for the requests that were objected to, within fourteen days, or such other time deemed reasonable by the court, and for payment of the costs incurred in filing this motion in an amount the court deems equitable and just.
"_____________
"[2]'The party asserting the quality-assurance privilege has the burden of proving its applicability as well as the prejudicial effect of disclosing the information in question. Ex parte Coosa Valley Health Care, Inc., 789 So.2d 208, 219 (Ala. 2000) (noting that, with regard to § 22-21-8, "the burden of proving that a privilege exists and proving the prejudicial effect of disclosing the information is on the party asserting the privilege").' Ex parte Altapointe Health Sys.[, Inc.], [Ms. 1160544, Sept. 8, 2017]. ' "Whether a communication is privileged is a question of fact to be determined by the trial court from the evidence presented ...." Exxon Corp. v. Department of Conservation & Natural Res., 859 So.2d 1096, 1103 (Ala. 2002) (quoting Ex parte DCH Reg'l Med. Ctr., 683 So.2d 409, 412 (Ala. 1996) ). The burden is on the party asserting the attorney-client privilege to establish the existence of an attorney-client relationship as well as other facts demonstrating the claim of privileged information. Ex parte DCH Reg'l Med. Ctr., 683 So.2d at 412.' Ex parte Nationwide Mut. Ins. Co., 990 So.2d 355, 363 (Ala. Mar. 7, 2008)."
On February 1, 2018, the defendants filed a response to the estate's motion to compel. The defendants again did not object to Requests 3 and 4. However, with regard to the remaining requests, the defendants stated:
"REQUEST 1. The entire employment file for Courtney Johnston.
"Defendants have objected, at least in part, to this request as it seeks the 'entire' employment file for Courtney Johnston. That file will contain information and things that are not discoverable in this action. As stated in response to number 3, these defendants have not objected to training materials relative to Courtney Johnston that existed as of the time of the subject incident as these defendants acknowledge the same are discoverable since the [estate] pled a claim for alleged inadequate training. If and to the extent that Courtney Johnston's employment file contains such training materials, those portions of the file will be produced. Otherwise, defendants maintain their objection to non-discoverable materials in her file.
*1025 "REQUEST 2. Any and all disciplinary records related to Courtney Johnston.
"These defendants filed timely specific objections to this request. This request directly seeks production of information that is 'quality assurance' in nature. By Alabama statute, § 22-21-8, [Ala. Code 1975,] quality assurance activities and the results of those activities, including but not limited to disciplinary action [are] strictly prohibited and expressly not allowed as discovery in a civil action such as this. The Alabama legislature set down this statute with obvious policies, encouraging medical care providers to conduct quality assurance when necessary and respond accordingly, and in furtherance of that policy made the information generated from such activities privileged so that hospitals would not be punished or discouraged from conducting meaningful quality assurance activities including, but not limited to disciplinary matters when appropriate. [The estate's] motion to compel is due to be denied regarding this request.
"....
"REQUEST 5. Any and all disciplinary records related of any nurse, agent, or employee or any other individual arising from or related to having provided care for Fredrick O'Brian Elliott.
"This request is essentially the same as number 2, and the same objections and law apply to the same. For those same reasons, [the estate's] motion to compel is due to be denied as to this request.
"REQUEST 6. Any and all complaints, reports, inspections, audits, investigations or writing submitted to or received from any licensing agency, accrediting or regulatory agency, body or governmental entity arising from or related to providing care for Fredrick O'Brian Elliott.
"Defendants objected to number 6 on similar grounds to numbers 2 and 5 as this request blatantly and directly seeks production of quality assurance and credentialing information, both of which are privileged under § 22-21-8 of the Code of Alabama [1975].
"In pertinent part, that statute provides the following which applies directly to this request:
" 'All accreditation, quality assurance credentialing, and similar materials shall be held in confidence and shall not be subject to discovery or introduction into evidence in any civil action against a health care professional or institution arising out of matters which are the subject of evaluation and review for accreditation, quality assurance and similar functions, purposes, or activities.'
" Section 22-21-8 of the Code of Alabama [1975] (emphasis added).
"Thus, [the estate's] motion to compel is clearly due to be denied as to request number 6.
"REQUEST 7. Any document, writing, statement, record, related to any internal audits, investigations, root cause analysis, or finding performed by any of the above named defendants arising from or related to providing care for Fredrick O'Brian Elliott.
"Defendants adopt the grounds asserted above in objection to number 6. This request likewise blatantly seeks quality assurance information, specifically asking for 'root cause analysis' which is the very essence of a quality assurance activity. Defendants respectfully submit this request is due to be denied as well as the [estate's] motion to compel on the same."
On February 1, 2018, the estate filed a reply to the defendants' response to the *1026 motion to compel. In its reply, the estate asserted:
"2. In their response defendants re-hash and present no additional or different grounds than those previously asserted in their objections for refusing to provide document[s] responsive to [the estate's] requests, namely that the requests seek records which are privileged.
"3. Defendants have not provided a privilege log as required by Rule 26 of the Rules of Civil Procedure and [the estate] cannot respond to vagaries and hypotheticals, yet that is exactly what defendants expect [the estate] to do.
"4. Defendants have not offered any facts to satisfy their burden of proof that the documents requested are privileged and not discoverable.
"5. For clarity of the record, [the estate] makes the following modification to [its] second request for production of documents, which was previously communicated to defendants prior to the filing of their response: (1) [the estate] withdraws request number 6, and (2) [the estate] limits request number # 7 to those records prepared or used for reasons other than Quality Assurance, licensing, accreditation, or peer review."
After hearing oral arguments on the motion to compel, the trial court entered an order granting the motion to compel as to Requests 3 and 4, noting that Request 6 was withdrawn, and denying the motion to compel as to Requests 1, 2, 5, and 7.[2] PBMC did not submit a privilege log, and the trial court's order did not require PBMC to submit a privilege log. The estate filed a petition for a writ of mandamus, and this Court ordered answer and briefs.
Standard of Review
" ' In Ex parte Norfolk Southern Ry., 897 So.2d 290 (Ala. 2004), this Court delineated the limited circumstances under which review of a discovery order is available by a petition for a writ of mandamus and the standard for that review in light of Ex parte Ocwen Federal Bank, FSB, 872 So.2d 810 (Ala. 2003) :
" ' " 'Mandamus is an extraordinary remedy and will be granted only when there is "(1) a clear legal right in the petitioner to the order sought, (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so, (3) the lack of another adequate remedy, and (4) properly invoked jurisdiction of the court." Ex parte Alfab, Inc., 586 So.2d 889, 891 (Ala. 1991). In Ex parte Ocwen Federal Bank, FSB, 872 So.2d 810 (Ala. 2003), this Court announced that it would no longer review discovery orders pursuant to extraordinary writs. However, we did identify four circumstances in which a discovery order may be reviewed by a petition for a writ of mandamus. Such circumstances arise (a) when a privilege is disregarded, see Ex parte Miltope Corp., 823 So.2d 640, 644-45 (Ala. 2001) ; (b) when a discovery order compels the production of patently irrelevant or duplicative documents the production of which clearly constitutes harassment or imposes a burden on the producing party far out of proportion to any benefit received by the requesting party, see, e.g., Ex parte Compass Bank, 686 So.2d 1135, 1138 (Ala. 1996) ; (c) when the trial court either imposes sanctions effectively *1027 precluding a decision on the merits or denies discovery going to a party's entire action or defense so that, in either event, the outcome of the case has been all but determined and the petitioner would be merely going through the motions of a trial to obtain an appeal; or (d) when the trial court impermissibly prevents the petitioner from making a record on the discovery issue so that an appellate court cannot review the effect of the trial court's alleged error. The burden rests on the petitioner to demonstrate that its petition presents such an exceptional case -- that is, one in which an appeal is not an adequate remedy. See Ex parte Consolidated Publ'g Co., 601 So.2d 423, 426 (Ala.1992).' "
" ' 897 So.2d at 291-92 (quoting Ex parte Dillard Dep't Stores, Inc., 879 So.2d 1134, 1136-37 (Ala. 2003) ).'
" Ex parte Orkin, Inc., 960 So.2d 635, 638 (Ala. 2006)."
Ex parte Nationwide Mut. Ins. Co., 990 So.2d 355, 360 (Ala. 2008). Additionally, "[d]iscovery matters are within the trial court's sound discretion, and this Court will not reverse a trial court's ruling on a discovery issue unless the trial court has clearly exceeded its discretion. Home Ins. Co. v. Rice, 585 So.2d 859, 862 (Ala. 1991)." Ex parte Ocwen Fed. Bank, FSB, 872 So.2d 810, 813 (Ala. 2003).
Discussion
In its petition, the estate asks this Court to direct the trial court to vacate its order insofar as it denies its motion to compel production of the documents requested in Requests 1, 2, 5, and 7 without requiring PBMC to produce a privilege log because, it says, PBMC failed to prove that the documents withheld were privileged and because the "circuit court overlooked the requirement of Rule 26(b)(6) [, Ala. R. Civ. P.,] which requires the party withholding information on the basis of privilege to provide a description of the documents in sufficient detail to enable the demanding party to contest the claim." The estate goes on to argue:
"[I]n denying [the estate's] motion to compel without any proof the information withheld is privileged, the trial court has impermissibly deprived the Estate from making a record of the issue such that the appellate court cannot adequately review the effect of the trial court's error on appeal."
In their response to the motion compel, the defendants asserted that Johnston's employment file, which was sought in Request 1, included privileged information. However, they did not include any information regarding what type of documents in that file were privileged or why such documents would be privileged.
With regard to Requests 2, 5, and 7, the defendants alleged that the requested documents constituted quality-assurance materials that are privileged under § 22-21-8, Ala. Code 1975.
" Section 22-21-8 provides, in part:
" '(a) Accreditation, quality assurance and similar materials as used in this section shall include written reports, records, correspondence, and materials concerning the accreditation or quality assurance or similar function of any hospital, clinic, or medical staff. The confidentiality established by this section shall apply to materials prepared by an employee, advisor, or consultant of a hospital, clinic, or medical staff and to materials prepared by an employee, advisor or consultant of an accrediting, quality assurance or similar agency or similar body and to any individual who is an employee, advisor or consultant of a hospital, clinic, medical staff or accrediting, quality assurance or similar agency or body.
*1028 " '(b) All accreditation, quality assurance credentialling and similar materials shall be held in confidence and shall not be subject to discovery or introduction in evidence in any civil action against a health care professional or institution arising out of matters which are the subject of evaluation and review for accreditation, quality assurance and similar function, purposes, or activities. No person involved in preparation, evaluation or review of accreditation, quality assurance or similar materials shall be permitted or required to testify in any civil action as to any evidence or other matters produced or presented during the course of preparation, evaluation, or review of such materials or as to any finding, recommendation, evaluation, opinion, or other action of such accreditation, quality assurance or similar function or other person involved therein....'
"This Court has given § 22-21-8 a broad interpretation. See, e.g., [Ex parte] Fairfield Nursing [and Rehab. Ctr., L.L.C.], 22 So.3d at [445,] 452 [ (Ala. 2009) ] (noting that the language of § 22-21-8 does not require the existence of a quality-assurance committee or limit the privilege to materials created by such a committee); Ex parte Krothapalli, 762 So.2d 836, 839 (Ala. 2000) (noting the 'broad language used by the Legislature' in the title to the act that became § 22-21-8 ). Nevertheless, the party asserting the quality-assurance privilege has the burden of proving its applicability as well as the prejudicial effect of disclosing the information in question. Ex parte Coosa Valley Health Care, Inc., 789 So.2d 208, 219 (Ala. 2000) (noting that, with regard to § 22-21-8, 'the burden of proving that a privilege exists and proving the prejudicial effect of disclosing the information is on the party asserting the privilege')."
Ex parte Altapointe Health Sys., Inc., 249 So.3d 1108, 1115-16 (Ala. 2017).
In Ex parte Coosa Valley Health Care, Inc., 789 So.2d 208 (Ala. 2000), this Court addressed an argument that certain information was privileged quality-assurance information that was not discoverable pursuant to § 22-21-8, Ala. Code 1975, as follows:
"Coosa Valley also argues that the information at issue was not discoverable because, Coosa Valley says, it is 'quality-assurance information' and is therefore privileged under § 22-21-8, Ala. Code 1975. However, as this Court noted in Ex parte St. Vincent's Hospital, 652 So.2d 225, 230 (Ala. 1994), the burden of proving that a privilege exists and proving the prejudicial effect of disclosing the information is on the party asserting the privilege. Coosa Valley has offered no evidence to show that the information sought was maintained for purposes of quality assurance or for any other purpose covered by § 22-21-8. Compare Ex parte Qureshi, 768 So.2d 374 (Ala. 2000) ; Ex parte Krothapalli, 762 So.2d 836 (Ala. 2000) (in each of those cases, the petitioner submitted evidence in the form of affidavits establishing that the information sought by the discovery requests was privileged). Accordingly, Coosa Valley did not meet its burden of proving that the information sought by the discovery requests was privileged."
789 So.2d at 219-20.
In their initial objection to the estate's requested discovery, the defendants merely argued that the documents were privileged and included a list of statutes under which they stated the requested information was privileged or nondiscoverable. In its motion to compel, the estate pointed out that the defendants' response *1029 included scattergun objections and did not include any facts, and it asked the trial court to order the defendants to provide a privilege log with regard to documents to which the defendants objected. In their response to the motion to compel, the defendants presented general arguments that Requests 1, 2, 5, and 7 sought privileged information. However, they did not present any affidavits or any other evidence to support their assertion that the requested information was privileged. Rather, it appears that the defendants relied solely upon the statements of counsel to support their assertion of privilege.
" ' " 'In considering a mandamus petition, we must look at only those facts before the trial court.' Ex parte American Res. Ins. Co., 663 So.2d 932, 936 (Ala. 1995) (emphasis added). Of course, facts must be based upon 'evidentiary material,' which does not include statements of counsel in motions, briefs, and arguments. Ex parte McCord-Baugh, 894 So.2d 679, 686 (Ala. 2004). See also Providian Nat'l Bank v. Conner, 898 So.2d 714, 719 (Ala. 2004).
" ' Ex parte ADT Sec. Servs., Inc., 933 So.2d 343, 345 (Ala. 2006). See also Ex parte Verbena United Methodist Church, 953 So.2d 395, 399 (Ala. 2006). Because the information before this Court regarding Wright's assertions is contained in "statements of counsel in motions, briefs, and arguments," it cannot be considered "evidentiary material" and thus will not be considered by this Court.'
" Ex parte Autauga Heating & Cooling, LLC, 58 So.3d [745,] 749-50 [ (Ala. 2010) ]."
Ex parte Waltman, 116 So.3d 1111, 1119 (Ala. 2013). Therefore, there were no facts before the trial court to establish that the requested documents were, in fact, privileged.[3]
Additionally, the lack of evidence to establish the privilege is exacerbated by the fact that the defendants did not submit a privilege log describing the information or documents that were being withheld as privileged information. Rule 26(b)(6)(A), Ala. R. Civ. P., provides:
"When a party withholds information otherwise discoverable under these rules on claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and, upon written request by any other party, shall be supported by a description of the nature of the documents, communications, or things not produced sufficient to enable the demanding party to contest the claim. This supporting description shall be served within twenty-one (21) days of the date a request is served, unless otherwise ordered."
(Emphasis added.)
In its motion to compel, the estate specifically requested that the trial court order the defendants "to provide a privilege log with sufficient detail, for the requests that were objected to." Thus, the estate filed a written request for a description of the documents that were being withheld.[4]
*1030 However, the trial court denied the estate's motion to compel responses to Requests 1, 2, 5, and 7 without first requiring the defendants to produce a privilege log describing the documents being withheld. Without any description of the documents that were being withheld, the estate could not effectively formulate a response to the defendants' assertion of privilege. Additionally, by not requiring the defendants to provide a privilege log, the trial court denied the estate of the opportunity to present an effective argument on appeal challenging the trial court's denial of its requests for production set forth in Requests 1, 2, 5, and 7. In this case, the trial court denied the estate's motion to compel the production of the information requested in Requests 1, 2, 5, and 7 based solely on the assertions of counsel for the defendants. Thus, the defendants did not satisfy their burden of establishing that the information requested in Requests 1, 2, 5, and 7 was privileged. See Ex parte Coosa Valley Health Care, supra. Additionally, by denying the estate's Requests 1, 2, 5, and 7 without ordering the defendants to produce a privilege log describing the withheld materials and without requiring the defendants to present any evidence to establish that the requested information was, in fact, privileged, the trial court effectively prevented the estate "from making a record on the discovery issue so that an appellate court cannot review the effect of the trial court's alleged error." Ex parte Ocwen, 872 So.2d at 814. Thus, the trial court exceeded its discretion when it denied the estate's requests for production in Requests 1, 2, 5, and 7.
Conclusion
For these reasons, the estate has established a clear legal right to the relief sought. Accordingly, we grant the petition for a writ of mandamus and direct the trial court to vacate the portion of its March 7, 2018, order denying the estate's motion to compel production of the documents sought in the Requests 1, 2, 5, and 7 of the estate's second request for production and to order the production of those documents.
PETITION GRANTED; WRIT ISSUED.
Stuart, C.J., and Parker, Shaw, Main, Bryan, and Mendheim, JJ., concur.
Bolin and Sellers, JJ., concur in the result.

The complaint named as defendants "BROOKWOOD BAPTIST HEALTH 1, LLC, d/b/a Princeton Baptist Medical Center, BAPTIST HEALTH SYSTEM, INC., d/b/a Princeton Baptist Medical Center, BBH PBMC, LLC, d/b/a Princeton Baptist Medical Center." In its answer, PBMC stated that its "true and correct name is Baptist Health System, Inc., d/b/a Princeton Baptist Medical Center."

Neither party has provided this Court with a transcript of the oral arguments that were presented to the trial court.

We also note that, in their response to the petition for a writ of mandamus, the defendants do not address, much less refute, the estate's assertion that they did not present any evidence to support their claim that the requested documents were privileged.

In their brief filed in this Court, the defendants argue that they were not required to provide a privilege log because the estate did not serve them with a request for a privilege log before the estate filed its motion to compel. However, Rule 26(b)(6)(A), Ala. R. Civ. P., states that the withholding party shall provide a description of the documents being withheld "upon written request of any other party." Nothing in Rule 26(b)(6)(A), Ala. R. Civ. P., requires that such a request must be filed before a motion to compel is filed.